UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEE GOLDEN III,

                  Plaintiff,

      -against-

MICHAEL GRECCO PRODUCTIONS, INC.;
MICHAEL GRECCO; MICHAEL GRECCO
PHOTOGRAPHY, INC.; JOHN DOES 1-10; and
BUSINESS ENTITIES A-J,

                  Defendants.

**MEMORANDUM & ORDER**
19-CV-3156 (NGG) (RER)

NICHOLAS G. GARAUFIS, United States District Judge.

In February 2019, a representative for Defendant Michael Grecco and his associated co-Defendant business entities contacted Plaintiff Lee Golden III to inform him that a July 2015 post on Golden's blog contained a copyrighted image that he did not have a license to use. The image was a 1998 portrait of the actress Lucy Lawless in her iconic 1990s titular role as *Xena: Warrior Princess* (the "Xena Photograph"). In anticipation of a lawsuit for copyright infringement, Golden filed this action, seeking a Declaratory Judgment stating that his use of the image was not copyright infringement under the Fair Use Doctrine. Grecco answered and asserted a counterclaim for copyright infringement, to which Golden asserted 15 affirmative defenses. Now before the court is Grecco's Motion for Summary Judgment on Golden's original claim and his counterclaim. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. ("Mem.") (Dkt. 25); Pl.'s Mem. in Opp. ("Opp.") (Dkt. 26); Defs.' Reply ("Reply") (Dkt. 27).) For the following reasons, Grecco's motion is GRANTED. The court awards Defendant $750 in statutory damages, the minimum allowable under the Copyright Act, and declines to award attorneys' fees or costs. *See* 17 U.S.C. §§ 504(c)(2), 505.

1

I.  BACKGROUND[1]

Michael Grecco is a successful photographer whose work has appeared frequently in popular media. (*See* Defs.' Local R. 56.1 Statement ("56.1") (Dkt. 25-1) ¶ 1.) In 1997, he travelled to New Zealand for a photoshoot for the television show *Xena: Warrior Princess*, for which MCA Television Group paid him $25,000. (*Id.* ¶¶ 3-4.) Grecco retained all copyrights to the photographs from the shoot, including the Xena Photograph. (*Id.* ¶ 8.) He subsequently transferred the copyrights to Michael Grecco Photography, Inc., which changed its name to Michael Grecco Productions, Inc. in 2012. (*Id.* ¶¶ 9-10, 17.)[2] Since 2009, many of Grecco's photographs have been available to license through Getty Images, including the Xena Photograph. (*Id.* ¶ 12.) Golden claims, based on information produced during discovery, that the Xena Photograph was licensed 11 times between 2010 and 2013, generating a total of $3.94 in revenue for Grecco, and has not been licensed since. (*See* Opp. at 12; Decl. of Yevgeny Strupinsky (Dkt. 26-3) Ex. 1 at ECF p. 5.) Grecco insists that is an "erroneous interpretation of the licensing spreadsheet provided in discovery," but declines to provide the correct amount, claiming that the licensing fee is irrelevant to the case at bar. (*See* Reply at 3.)

---

[1] The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

[2] Golden concedes that Grecco's business entities are the relevant copyright holders and that any claims against Michael Grecco as an individual should be dismissed. (*See* Opp. at 5.) The relevant party in this litigation is Michael Grecco Productions, Inc. For the sake of simplicity, the court uses "Grecco" to refer both to the individual and to his incorporated entity.

The United States Copyright Office issued a registration for a group of Grecco's photographs, including the Xena Photograph, on July 7, 2010. (*Id.* ¶¶ 15-16.)

Lee Golden III is the owner and operator of the pop culture blog www.filmcombatsyndicate.com. (56.1 ¶ 20.) In 2015, Golden published a blogpost about a rumored reboot of the 1990s television series *Xena: Warrior Princess* with the title, "The XENA Series Reboot Was Happening. Then It Wasn't, But Now It Is . . . Is It?". (Decl. of Lee Golden III ("Golden Decl.") (Dkt. 26-2) ¶ 7; 56.1 ¶ 21.) Along with the blogpost, Golden posted an image of Lucy Lawless as Xena; specifically, he posted Grecco's Xena Photograph. (*See* Blogpost (Dkt. 25-2) at ECF p. 54.) Golden found the picture by searching the social media platform Tumblr and avers that he believed it was "a free, promotional photograph of Xena on Tumbler [sic] posted with permission and free to use." (Golden Decl. ¶¶ 8-10.) Golden's website earns money by displaying banner ads and is paid per click on its articles; however, he asserts that he never earned any money from the Xena post and submits evidence to show that the post earned no money from July 2018 until it was taken down. (*Id.* ¶¶ 11-13.)

On October 5, 2018, Grecco discovered Golden's blogpost, which was more than three years old. (56.1 ¶ 21.)[3] In February 2019, Grecco's counsel contacted Golden, alleging that he was unlawfully displaying a copyrighted image. (Golden Decl. ¶ 14.) Golden immediately responded to apologize and to say that he did not know the material was copyrighted. (*See* Feb. 13, 2019 Email of Lee Golden (Dkt. 26-2) at ECF p. 10.) Golden took down the blogpost upon receiving the notice. (Golden Decl. ¶ 14.) Despite the apology and removal, on April 29, 2019, Grecco's

---

[3] When Grecco discovered the post, the publication date was listed as July 8, 2018, which is the date when filmcombatsyndicate.com switched its webhosting service. (*See* 56.1 ¶ 22; Golden Decl. ¶ 11.)

attorney wrote Golden to say that he was liable for up to $150,000 for his infringement, but that Grecco would accept a $25,000 settlement. (*See* April 29, 2019 Letter (Dkt. 26-2) at ECF p. 13.) Grecco's attorney also included a draft complaint that he threatened to file in the United States District Court in Los Angeles if Golden failed to meet the settlement demand. (*Id.*) Rather than face costly litigation in California, Golden filed this case, seeking a declaration that he did not violate Grecco's copyright, or in the alternative, that he was liable for either no compensatory damages or significantly reduced statutory damages because he was an innocent infringer. (*See* Compl. (Dkt. 1) ¶ 1.) Grecco then asserted a single counterclaim for copyright infringement. (*See* Ans. and Amend. Counterclaim (Dkt. 12).)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).[4] "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by

---

[4] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

4

demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 225 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). While the court must draw all inferences in favor of the non-movant, the non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

## III. DISCUSSION

For ease of analysis, the court first considers Grecco's counterclaim for copyright infringement, followed by Golden's fair use defense and other affirmative defenses.

### A. Copyright Infringement

"To establish [copyright] infringement two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Ownership is not at issue here, because Golden admits that Grecco has produced a valid copyright registration for the Xena Photograph. (56.1 ¶ 16; Pl.'s 56.1 Resp. (Dkt. 26-1) ¶ 16.) *See Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012) ("A certificate of copyright registration is prima facie evidence of ownership of a valid copyright, but the alleged infringer may rebut that presumption.").

Grecco has also met the second prong for "originality" because the Xena Photograph is clearly an example of portrait photography, reflecting the artistic choices of Grecco, its author. *See* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial"

and "graphic" works of authorship); *see also Burrows-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884) (holding that a photographic portrait of Oscar Wilde was "an original work of art, the product of [the photographer's] intellectual invention, of which [the photographer] is the author, and of a class of inventions for which the constitution intended that congress should secure to him the exclusive right to use, publish, and sell, as it has done by [statute]."). Grecco has therefore demonstrated that he is entitled to summary judgment on his counterclaim for copyright infringement, subject to Golden's affirmative defenses, considered below.

### B. Fair Use

Golden's primary defense, asserted in his Complaint and in his affirmative defenses to Grecco's counterclaim (*see* Ans. to Counterclaim (Dkt. 15)), is that his blogpost constituted a fair use of the copyrighted image and is therefore not infringement under 17 U.S.C. § 107.

The purpose of copyright law is "[t]o promote the Progress of Science and useful Arts," U.S. Const., Art. I, § 8, cl. 8, and "expand public knowledge and understanding ... by giving potential creators exclusive control over copying of their works, thus giving them a financial incentive to create informative, intellectually enriching works for public consumption." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 212 (2d Cir. 2015). There are limits, however, on creators' control over their work, including the doctrine of fair use. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) ("Because copyright law recognizes the need for breathing space, however, a defendant who otherwise would have violated one or more of these exclusive rights may avoid liability if he can establish that he made fair use of the copyrighted material.").

"[T]he fair use determination is an open-ended and context sensitive inquiry," in which the court weighs four non-exclusive

statutory factors in light of the purposes of copyright. *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013). Those factors are: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market or value of copyrighted work. 17 U.S.C. § 107. The party seeking a fair use determination need not demonstrate that every factor weighs in its favor. *See Cariou*, 714 F.3d at 705. Rather, "all factors are to be explored, and the results weighed together, in light of the purposes of copyright." *Swatch*, 756 F.3d at 81 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)). The determination of "fair use is a mixed question of law and fact," *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985), and the Second Circuit has repeatedly "resolved fair use determinations at the summary judgment stage where there are no genuine issues of material fact," *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) (quoting *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).

1. Purpose and Character of the Work

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). This factor, which has been described as "[t]he heart of the fair use inquiry," *On Davis v. The Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001), seeks to determine "whether and to what extent the work is transformative." *Campbell*, 510 U.S. at 579. Whether a work is transformative depends on the extent to which it "merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* (quoting *Folsom v. Marsh*, 9 F.Cas. 342, 348 (C.C.D. Mass. 1841) (Story, J.)); *see also* Pierre N. Leval, *Toward a Fair Use Standard*,

7

103 Harv. L. Rev. 1105, 1111 (1990). With regard to photographs, "[u]sing a photo for the precise reason it was created does not support a finding that the nature and purpose of the use was fair." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016).

Golden argues that because he took a promotional commercial photograph that was intended to promote the original *Xena: Warrior Princess* television show and repurposed it in a blogpost commenting on a possible future reboot of the show, his use of the photograph was transformative. (*See* Opp. at 6-8.) That is unpersuasive. As this court recently held, although the Copyright Act, at 17 U.S.C. § 107, cites "news reporting" as one method of fair use, "the promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457, 467 (E.D.N.Y. 2020) (quoting *Harper & Row,* 471 U.S. at 557). Like the infringing defendant in *Cruz,* Golden "used the Photograph as an illustrative aid because it depicted the subjects described in the Article," not because the image itself served an important public purpose or disseminated important information. *Cruz,* 444 F. Supp. 3d at 468 (distinguishing *Swatch,* 756 F.3d at 82). "Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about* that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (emphasis in original). That situation is distinct from an author who lifts someone else's copyrighted material because it provides an attractive image to go along with the story he is reporting.

8

Recognizing that the news reporting cases are not in his favor, Golden instead tries to analogize his case to *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006). In that case, the Second Circuit held that the publisher of a 480-page coffee table book about the cultural history of the Grateful Dead was not liable for infringement for including copyrighted images from the band's history, such as concert posters, in the book. *Id.* at 608-610. Noting that "courts have frequently afforded fair use protection to the use of copyrighted material in biographies, recognizing such works as forms of historic scholarship, criticism, and comment that require incorporation of original source material for optimum treatment of their subjects," the court determined that the book served the "transformative purpose of enhancing the biographical information . . ., a purpose separate and distinct from the original artistic and promotional purpose for which the images were created." *Id.* at 610. But Golden's post was not a work of history, scholarship, or criticism; it was news reporting about rumors regarding a television show's revival. His blogpost did not transform the purpose of the material from promotion to historical artifact; it appropriated the image to illustrate the subject of his reporting.

Because Golden's use of the image was not transformative, the first factor weighs against a finding of fair use.

2. Nature of the Copyrighted Work

The second factor looks to the nature of the copyrighted work and acknowledges that "some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. A portrait photograph that is the clear product of the photographer's artistic choices,

like the Xena Photograph, falls close to the core of copyright protection. *See, e.g. Burrow-Giles*, 111 U.S. at 54-55.[5] Thus, this factor cuts heavily in Grecco's favor.

### 3. Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

The third factor considers whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Generally speaking, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998). Because Golden used the entire image, unaltered, this factor clearly favors Grecco.

### 4. Effect of the Use on the Potential Market

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor requires the court to investigate whether infringement will affect a "traditional, reasonable, or likely to be developed market." *Bill Graham Archives*, 448 F.3d at 614. This factor is "concerned with secondary uses that, by offering a substitute for the original, usurp a market that properly belongs to the copyright-holder." *Infinity Broad. Corp.*, 150 F.3d at 110; *see also Harper & Row*, 471 U.S. at 566-67 ("Fair use, when properly

---

[5] Golden writes that "we leave it to the Court to compare the picture of Oscar Wilde [at issue in *Burrow-Giles*] to the picture of Xena," before concluding that the Wilde portrait "is high art: striking, deliberate, and narrative" whereas the Xena Photograph "is a headshot against a white background." (Opp. at 10.) The court will not evaluate the comparative artistic merit of two portraits. Indeed, there may be no starker example of the threat that judicial scrutiny can pose to artistic expression than the story of Oscar Wilde. *See* Martha M. Ertman, *Oscar Wilde: Paradoxical Poster Child for Both Identity and Post-Identity*, 25 L. & Soc. Inq. 153 (2000).

10

applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.")

The Xena Photograph was licensed 11 times between 2009 and 2013, generating $3.94 in fees for Grecco, and has not been licensed since. (56.1 ¶ 14; Opp. at 12.)[6] Thus, Golden is correct that when he posted the photograph to his blog in 2015, he is unlikely to have dealt Grecco any compensable damage. (*See* Opp. at 12.) On the other hand, Grecco is certainly correct that allowing websites to post copyrighted material without a license merely because the market for the material has gone cold would pose a substantial threat to the licensing market in general. (*See* Mem. at 13.)

In a fair use analysis, the court must weigh the factors "in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. Golden's defense that Grecco likely did not lose money as a result of his infringement does not adequately address the broader policy concerns that the court must weigh. As the Supreme Court has stated with regard to an earlier version of the Copyright Act, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy." *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952). As discussed below, the Copyright Act permits a copyright owner to elect to pursue statutory damages in excess of actual damages, even when actual damages are provable. *See* 17 U.S.C. § 504(c). The parties in this case dispute whether the damages should be 50 times or 190 times the total that Grecco has ever received in licensing fees for the Xena Photograph, should the court find infringement, exemplifying that

---

[6] As mentioned above, Grecco disputes this figure but offers nothing to rebut Golden's interpretation of the data which was produced during discovery.

11

the purpose of the Copyright Act's remedial scheme goes beyond any individual copyright holder's injury.[7] *See, e.g. Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (citing "deterrent effect" as a factor in "deciding upon the appropriate statutory damages award"). In sum, the statute and caselaw require the court to consider more than merely the effect of Golden's infringement on Grecco. The court must also weigh the effect on the market in general to allow a fair use defense on the basis that the copyright holder was unlikely to have suffered actual damages based on the status of the market for the copyrighted material at issue. *See Harper & Row,* 471 U.S. at 568 ("[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'") (quoting *Sony Corp. of America v. Universal City Studios Inc.*, 464 U.S. 417, 451 (1984)); *see also Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006) ("In considering the fourth factor, our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work."). At bottom, Grecco was paid handsomely to produce the original photograph to promote the television show in 1997. He retained the copyright to that image so that he could license it, for a fee, for secondary use. That secondary market would be meaningless if entertainment websites could use the image without paying the licensing fee, even if few or no customers showed interest in the Xena Photograph by 2015. In light of those broader copyright policy concerns, the fourth factor favors Grecco and counsels against a finding of fair use.

---

[7] Grecco has received $3.94 in licensing fees for the photograph. Golden argues that, if the court finds infringement, it should award $200 in statutory damages. (Opp. at 17-18.) Grecco argues that the court should award $750. (Mem. at 24.)

12

All told, three of the four fair use factors cut decisively in Grecco's favor. The fourth factor also favors Grecco. Taken together, Golden's infringing use of Grecco's copyright was not fair use.

### C. Remaining Affirmative Defenses

In his initial response to Grecco's counterclaim, Golden raised 15 affirmative defenses. (*See* Ans. to Counterclaim at 4-5.) Of those, he abandoned seven in his brief opposing summary judgment. In addition, one of the remaining defenses centered on the fair use doctrine, discussed above. Seven affirmative defenses remain: implied license, public domain, *de minimis* infringement, unclean hands, damages from Grecco's own conduct, damages for the conduct of third parties, and lack of profits.

A moving party who "uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the [non-moving party] bears the burden of proof at trial—[] may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *Fed. Deposit Ins. Corp. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). Golden bears the burden of producing sufficient evidence to support his affirmative defenses; insofar as he argues, for example, that "the absence of any facts . . . [indicating] that there was not an implied license creates a dispute of material facts," he is wrong. (Opp. at 19-20.)

***Implied License.*** Courts find "implied licenses only in narrow circumstances where one party created a work at the other's request and handed it over, intending that the other copy and distribute it." *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 211 F.3d 21, 25 (2d Cir. 2000). Golden offers no evidence that speaks to those elements, apart from his assertion that he did not believe he needed a license to use the photograph. (Opp. at 19-20.) He has failed to meet his burden on this defense.

***Public Domain.*** A copyrighted work is "not yet in the public domain." *Eldred v. Ashcroft*, 537 U.S. 186, 213 (2003). For instance, a copyrighted work created after January 1, 1978 "endures for a term consisting of the life of the author and 70 years after the author's death" before it enters the public domain. 17 U.S.C. § 302(a). Grecco holds a valid copyright for the Xena Photograph, so it is not in the public domain, and this affirmative defense fails.

***De Minimis Use.*** Golden has confused "*de minimis* use," which refers to the amount of the copyrighted material used in the offending work, with *de minimis* damages, which is not a defense to copyright infringement. *See On Davis*, 246 F.3d at 172 ("The *de minimis* doctrine essentially provides that where unauthorized copying is sufficiently trivial, the law will not impose legal consequences."); *id.* at 158 ("The existence of damages suffered is not an essential element of a claim for copyright infringement."). Because Golden used the Xena Photograph unaltered and in its entirety, he cannot claim that his use was *de minimis*.

***Unclean Hands.*** The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009). To be sure, Grecco and his attorneys have pursued this action aggressively and have continued to press litigation, even though Golden immediately took down the offending content upon notice. The court also notes that this team's conduct has led another court to suggest that Grecco's counsel might be considered a "copyright troll," a term that refers to someone who scours the internet for unlicensed use of copyrighted material for the purpose of extracting settlements. *See Werner v. Complex Media, Inc.*, No. 19-cv-10094 (DLC), 2020 WL 1435180 at *2 (S.D.N.Y. Mar. 24, 2020); *see also McDermott v. Monday Monday, LLC*, No. 17-cv-9230 (DLC), 2018 WL 1033240 at *3 (S.D.N.Y. Feb. 22, 2018). Whether the proliferation of images on the internet, along with

emergence of reverse image-searching technology, has spawned a copyright litigation industry in need of reform is a topic worthy of consideration. *See, e.g.,* Shyamkrishna Balganesh, *The Uneasy Case Against Copyright Trolls*, 86 S. Cal. L. Rev. 723, 769 (2013). However, if every copyright case were litigated through a Rule 56 summary judgment motion, copyright trolling would not likely be "a strain on the Court's time and resources," as Judge Denise Cote chided while noting how many cases counsel had filed in the Southern District of New York *without* a merits-based decision.[8] *Werner,* 2020 WL 1435180 at *2. Even if Golden's aspersions about Grecco's counsel have merit in the context of other litigation, those cases are not before the court. Golden may be a sympathetic copyright infringer and Grecco a litigious and opportunistic copyright holder, but that is not a basis for an "unclean hands" defense in this case.

***Damages from Grecco's Own Conduct.*** In support of his next affirmative defense, Golden argues that Grecco and his co-defendant entities "could have put their own photograph into the public domain or allowed it to exist, and ceased using copyright to advance arts and sciences and uses it now for litigation. As a result, they have caused any and all damages that they may have suffered – which, Plaintiff posits, is none." (Opp. at 21.) Again, damages are not an essential element of a claim for copyright infringement. Moreover, to the extent Golden is suggesting that as a policy matter Grecco bears fault for retaining the copyright to the Xena Photograph, rather than releasing it into the public domain, his argument is contradicted by the very purpose of copyright law. Accordingly, this is no defense to Grecco's counterclaim.

---

[8] Of course, if every "troll" lawsuit were litigated through summary judgment to recover $750, there would be little incentive to continue to bring those actions.

15

***Damages for the Conduct of Third Parties.*** Next, Golden suggests that because he found the image on the internet, it is possible that a licensee "could have placed this photograph into the public domain, sublicensed it to a third-party who put it on Tumblr, or any number of possible scenarios." (Opp. at 22.) Leaving aside that it is Golden's burden to proffer evidence to support an affirmative defense, a licensee would not be able to put Grecco's copyrighted image into the public domain. Likewise, even if Golden could prove that he had obtained the image from another infringing use, that would not be a defense to Golden's own subsequent infringement.

***Lack of Profits.*** Finally, Golden argues that because Grecco could hypothetically seek compensatory damages, he can assert a lack of profits from the infringement as an affirmative defense. (Opp. at 22.) If Grecco were to seek compensatory damages, he would need to offer proof of his losses, which Golden would have a chance to rebut. This argument is improperly framed as an affirmative defense.

Golden has not met his burden with regard to any of the seven remaining affirmative defenses, and thus, Grecco is entitled to summary judgment in favor of his counterclaim for copyright infringement.

### D. Remedies

#### 1. Statutory Damages

Under the Copyright Act, a copyright owner may elect to recover either actual, compensatory damages or statutory damages as a remedy for infringement. 17 U.S.C. § 504(c)(1). When a copyright holder seeks statutory damages, the court has "wide discretion" to set an award between a statutory minimum of $750 and a statutory maximum of $30,000 per infringed work. *Id.*; *see Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). If the infringement was willful, the statutory maximum increases to $150,000. 17 U.S.C. § 504(c)(2). In contrast,

if the infringement was "innocent," the statutory minimum decreases to $200. *Id.*; *see Bryant v. Media Right Prods.*, 603 F.3d 135, 139 (2d Cir. 2010). A copyright holder bears the burden to prove willfulness; an infringer bears the burden to prove innocence. *Bryant*, 603 F.3d at 143. Golden argues that he is, at most, an innocent infringer and that the statutory damages award should not exceed $200. (Opp. at 17-18.) Grecco counters that Golden has not met his burden to show that he is an innocent infringer and asks the court to award $750. (Reply at 4-5.)

An innocent infringer must demonstrate "both (1) a subjective good faith belief that his conduct was innocent, and (2) that his belief was objectively reasonable under the circumstances." *Marshall v. Marshall*, 08-cv-1420 (LB), 2012 WL 1079550 (E.D.N.Y. Mar. 30, 2012) (quoting *Childress v. Taylor*, 798 F. Supp. 981, 994 (S.D.N.Y. 1992)). "The mere absence of a copyright mark is not sufficient to establish innocent infringement . . . if the defendant had reason to believe the goods were copyrighted and unlicensed." *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990); *see also BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005) (holding that to determine "innocence" under Section 504(c)(2), the relevant question is whether the infringer "had access" to works bearing proper copyright notice, not whether the work at issue bore those notices). In the context of images found through internet searches, courts have held that the lack of a copyright notice alongside the copied image is not sufficient to show innocence where "information that a copyright existed was readily discoverable." *Reed v. Ezelle Inv. Props.*, 353 F. Supp. 3d 1025, 1037 (D. Or. 2018).

Golden is not an innocent infringer because it was not objectively reasonable under the circumstances to believe that the Xena Photograph was free for any person on the internet to copy and repurpose. Golden avers that he believed that the image he found on Tumblr was "a promotional photograph," that was posted

"with permission and was free to use." (Golden Decl. ¶¶ 9-10.) He offers no evidence beyond those statements. Accepting Golden's argument would lead courts to apply lower statutory damages to any layperson's use of the many copyrighted images available on the internet without notice of their copyrighted status. Moreover, Golden's claim that he believed the Xena Photograph was "promotional" cuts against his argument, because a "promotional" photograph is, by definition, a commercial image. The mere fact that Golden found an image on Tumblr does not qualify him as an "innocent" infringer, especially when he believed the image was promotional, and he is the proprietor of a website about the entertainment industry. Therefore, $750 is the proper statutory damages award under the Copyright Act.

2. Attorney's Fees and Costs

In addition to damages, Grecco wishes to seek attorney's fees and costs. In copyright cases, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion," pursuant to 17 U.S.C. § 505. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The court may consider a number of nonexclusive factors as part of the determination, such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* n.19. Those factors "guide courts' discretion, so long as [they] are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* The Copyright Act authorizes copyright holders to pursue statutory damages to protect intellectual property and, ultimately, to encourage the production of publicly available creative work. *See id.*; *Sony*, 464 U.S. at 429. Because Golden has acted in good faith, immediately removed the offending post upon notice, and likely caused little or no actual damages, a statutory damages award in Grecco's favor is more

18

than sufficient to advance the purposes of the Copyright Act. Accordingly, attorney's fees and costs are not warranted.

## IV. CONCLUSION

For the reasons stated, Defendant Michael Grecco Productions, Inc.'s motion for summary judgment as to Plaintiff Lee Golden III's claim for declaratory relief, and as to its counterclaim for copyright infringement, is GRANTED. Defendant is awarded $750 in statutory damages. Plaintiff's claims are DISMISSED as to the other defendants. The Clerk of the Court is respectfully DIRECTED to enter a judgment for Defendant and to close the case.

SO ORDERED.

Dated:    Brooklyn, New York
          March 9, 2021

      /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge